JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1710 JVS (GJSx)) | Date | August 26, 2022 |

| | |
|---|---|
| Title | The Ohio House LLC v. City of Costa Mesa |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Post-Trial Entry of Judgment on Plaintiff's Government Code § 65008 Claim**

Plaintiff the Ohio House LLC ("Ohio House") seeks entry of judgment in its favor against Defendant, the City of Costa Mesa (the "City") on Ohio House's claim for equitable relief under California Government Code § 65008. (Mtn., Dkt. 448 at 1.) The City opposes the motion. (Opp'n, Dkt. 450.) Ohio House filed a reply. (Reply, Dkt. 451.)

For the following reasons, the Court enters judgment in favor of the City on Ohio House's claim.

### I. BACKGROUND

Ohio House brought this action against the City based on its alleged pattern and practice of discrimination against Ohio House on the basis of disability under the federal Fair Housing Act ("FHA"), California's Fair Employment and Housing Act ("FEHA"), and California Government Code § 65008. (See Third Amended Complaint ("TAC"), Dkt. 45.)

Ohio House now seeks a judgment under § 65008 enjoining the City from taking any action requiring Ohio House to cease operation of its Wilson Property as a sober living home pursuant to the City's enforcement of Costa Mesa Municipal Code ("CMMC"), Title 13, Ch. XVI (CMMC §§ 13-323, 13-324) and Title 9, Ch. II, Art. 23 (CMMC § 9-370 et seq.).

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-1710 JVS (GJSx)                   Date   August 26, 2022

Title      The Ohio House LLC v. City of Costa Mesa

## II. LEGAL STANDARD

### A.   Fed. R. Civ. P. 52(a)

"In an action tried on the facts without a jury or with an advisory jury, the court must find the facts specially and state its conclusions of law separately.  The findings and conclusions may be stated on the record after the close of the evidence or may appear in an opinion or a memorandum of decision filed by the court."  Fed. R. Civ. P. 52(a).  "The district court is not required to base its findings on each and every fact presented at trial." Simeonoff v. Hiner, 249 F.3d 883, 891 (9th Cir. 2001).

### B.   Cal. Gov't Code § 65008

To prove its Cal. Gov't Code § 65008(a) claim, Ohio House has the burden of proving the following elements by a preponderance of the evidence: (1) the City denied individuals the enjoyment of residence, landownership, tenancy, or any other land use; (2) the disability of those persons was a motivating factor in that denial; and, (3) the City's denial caused Ohio House harm.  (Jury Instruction No. 39, Dkt. 423.)  A motivating factor need not be the only factor relied upon by the City, and "[a]n intent to discriminate may be established by direct or circumstantial evidence."  (Cal. Gov't Code § 12955.8(a))

## III. FINDINGS OF FACT

Ohio House operates a men's structured sober living environment in units A–E at 115 E. Wilson Street in Costa Mesa (the "Wilson Property").  (Trial Tr., Apr. 1, 2022, at 51:8–9, 21–25, 79:17–80:40 (Steinetz))

Ohio House started operating its first sober living home in a unit at 115 E. Wilson Street in 2012.  (Trial Tr. April 7, 2022, at 103:23–104:1 (Stump), Tr. Compendium at 518–519.)  Since then, Ohio House has expanded to all five units at 115 E. Wilson Street and Brandon Stump now owns each unit.  (Trial Tr. April 7, 2022 at 104:2–7 (Stump).)

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

The Wilson Property is located just off Newport Boulevard immediately behind and across the alley from a strip of commercial properties facing the boulevard. (Trial Ex. 1700; Trial Tr. April 1, 2022 at 69:3–75:4 (Steinetz).) Units A–E are side-by-side and each front door and garage opens to the alley immediately behind the commercial properties on Newport Boulevard. Id. Each of the five Wilson Street units is substantially identical, consisting of four bedrooms and three bathrooms and each comprising approximately 2,400 square feet. (Trial Ex. 1; Trial Ex. 182 (PCAR), at 5; Trial Tr. April 1, 2022 at 146:1–25 (Steinetz).)

Full occupancy would be eight residents and one house manager or house lead in each unit. (Trial Tr. April 1, 2022 at 185:5–12 (Steinetz).) The actual number of residents in each home fluctuates between six and eight. (Trial Tr. April 1, 90:21–91:1 (Steinetz).) The house manager or house lead has his own bedroom and the six to eight residents share the other three bedrooms. (Trial Tr. April 1, 2022 at 146:14–25 (Steinetz), Tr. Compendium at 40.)

In order to reside at Ohio House, residents enter into a housing agreement with strict rules, including abstinence from drugs or alcohol, and are subject to parking, house, volunteer, pickup, and good neighbor policies. (Trial Tr. April 1, 2022 at 51:21–52:6, 99:1–20, 102:22–103:7, 103:23–104:16 (Steinetz).)

## A.    Scope of the Issues

Ohio House filed its initial complaint on September 6, 2019. (Complaint, Dkt. 1.) After several amendments, the Third Amended Complaint ("TAC") became the operative complaint on July 10, 2020. (TAC, Dkt. 45.) The TAC states a claim under Cal. Gov't Code § 65008. (TAC, ¶¶ 397–399.)

The parties filed cross motions for summary judgment. (See Order re. Summary Judgment, Dkt. 245, at 1.) In its order on the cross motions for summary judgment, the Court determined that Ohio House had established, as a matter of law, "actual disability" under the FHA, FEHA, and § 65008. (Id. at 16.) The Court granted summary judgment in favor of the City with respect to Ohio House's disparate impact claim, and denied it as to pattern or practice and reasonable accommodation. Id. As to Ohio House's intentional discrimination claim, the Court concluded that "[b]ecause the Ordinances on their face

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx)) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

treat Sober Living Homes and Group Homes differently than similar dwellings for non-disabled individuals (i.e., boardinghouses), Ohio House ha[d] made out a prima facie case of intentional discrimination." Id. at 18.  But it found that there was a question of material fact as to whether that differential treatment was "justified" under Community House, 490 F.3d 1041 (9th Cir. 2007).  Id. at 21.

The Court held a trial on the remaining claims, and on April 18, 2022, the jury returned a verdict in favor of the City on Ohio House's claims for disparate treatment, discriminatory statements, and failure to make a reasonable accommodation under the FHA and FEHA.  (Verdict, Dkt. 434, at 1–3.)  The jury also returned an advisory verdict in favor of the City on Ohio House's claim under California Government Code § 65008. (Id. at 3.)

**B.    The City's Group Home Regulations and Policies**

**1.    Definitions of Uses**

Costa Mesa Municipal Code defines the following terms as follows:

Boardinghouse: "A residence or dwelling, other than a hotel, wherein rooms are rented under two (2) or more separate written or oral agreements, leases or subleases or combination thereof, whether or not the owner, agent or rental manager resides within the residence."  (Trial Ex. 1655 at 6.)

Boardinghouse, small: A boardinghouse in which *two (2) or fewer rooms* are being rented.  (Id.)

Boardinghouse, large: A boardinghouse in which *three (3) to six (6) rooms* are being rented.  (Id.)

Group Home: a "facility that is being used as a supporting living environment for persons who are considered handicapped understate or federal law."  Not including any home that operates as a single housekeeping unit.  (Ord. 14-13, Trial Ex. 1653 at 7–9; CMMC § 13-06; Trial Ex. 730 (14-13 Definition Chart).)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
| Title | The Ohio House LLC v. City of Costa Mesa | | |

Sober Living Home: "a Group Home for persons who are recovering from a drug and/or alcohol addiction and who are considered handicapped under state or federal law."  Not including any home that operates as a single housekeeping unit. (Id.)

## 2.    The Land Use Matrix

The Zoning Code Chapter II divides Costa Mesa into zoning districts permitted for different types of uses.  (Trial Ex. 1661, at 2, CMMC § 13-20.)  Those include districts for Residential use and for Institutional & Recreational (I&R) use.  (Id. at 2–3.) Residential districts are subdivided into Single Family (R1) and Multifamily districts (R2-MD to R3) based on housing density and structure types.  (Id.)  The I&R district "is intended to allow land uses which provide recreation, open space, health and public service uses."  (Id. at 3), CMMC § 13-20(*l*).

The Zoning Code Chapter IV contains the Citywide Land Use Matrix which shows which uses are permitted, conditionally permitted, or prohibited in the various zoning districts.  (Trual Ex. 1663 ("Land Use Matrix"), at 1.)  The Land Use Matrix provides the following:

For purposes of the Land Use Matrix, the relevant zoning districts are the following:

Residential zones: R1, R2-MD, R2-HD, and R3
Planned Development Residential zones: PDR-LD, PDR-MD, PDR-HD, and PDR NCM
Planned Development Commercial zone: PDC
Planned Development Industrial zone: PDI
Institutional and Recreational zones: I&R, I&R-S, and I&R-MLT

"Boardinghouse, small" is permitted to operate as of right in the R2-MD, R2-HD, R3, PDR-LD, PDR-MD, PDR-HD, PDR-NCM, PDC, and PDI districts and prohibited from operating in any other districts.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     SACV 19-1710 JVS (GJSx)                    Date   August 26, 2022

Title        The Ohio House LLC v. City of Costa Mesa

"Boardinghouse, large" is permitted to operate only if it obtains a CUP in the R2-MD, R2-HD, R3, PDR-MD, PDR-HD, PDR-NCM, PDC, and PDI districts and prohibited from operating in any other districts.

Group homes with six or fewer residents are permitted to operate only with a SUP in the R1, R2-MD, R2-HD, R3, PDR-LD, PDR-MD, PDR-HD, PDR-NCM, PDC, and PDI districts, permitted to operate as of right in the I&R and I&RM LT districts, and prohibited from operating in any other districts.
Sober living homes with six or fewer residents are permitted to operate only with a SUP in the R1, R2-MD, R2-HD, R3, PDR-LD, PDR-MD, PDR-HD, PDR-NCM, PDC, and PDI districts, permitted to operate as of right in the I&R district, and prohibited from operating in any other districts.

Group homes with seven or more residents are permitted to operate only with a CUP in the R2-MD, R2-HD, R3, PDR-MD, PDR-HD, PDR-NCM, PDC, and PDI districts, permitted to operate as of right in the I&R district, and prohibited from operating in any other districts.

Sober living homes with seven or more residents are permitted to operate only with a CUP in the R2-MD, R2-HD, R3, PDR-MD, PDR-HD, PDR-NCM, PDC, and PDI districts, permitted to operate as of right in the I&R district, and prohibited from operating in any other districts.

650 foot separation required between sober living homes, or from state licensed alcohol or drug abuse recovery or treatment facilities.  (citing CMMC § 13-311(a)(10)(i)).

Small boardinghouses shall locate at least 650 feet from any other small boardinghouse. Large boardinghouses shall be located at least 1,000 feet away from any other boardinghouse.

### 3.     The Operator's Permit Requirement

The terms of Chapter XVI of the Zoning Code adopted by way of Ordinance 15-11 required a group home to obtain an operator's permit as a condition of obtaining a CUP

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |

| | |
|---|---|
| Title | The Ohio House LLC v. City of Costa Mesa |

to operate in MFR zones.  (Trial Ex 1667 at 2, §§ 13-323(c), 13-324(b).)  A group home with seven or more occupants is prohibited from operating without an operator's permit. (Trial Ex. 1668 at 2, 5, CMMC § 9-372.)  "The only business, profession, trade, or occupation subject to Costa Mesa Municipal Code, Title 9, Chapter II, that involves operation of a dwelling is group homes as defined in Section 13-6 that have seven or more occupants." (Trial Tr. April 12, at 30:24–31:35, 31:17–22.)  No other residential uses, including boardinghouses, are subject to a right to operate pursuant to their CUP without a separate operator's permit.  (Trial Tr. April 6, at 154:16–156:5 (Vander Dussen) (that restriction only applies to group homes and cannabis businesses).)

4.      **The 2017 Permit Application and Notice Requirements**

The City adopted Ordinance 17-05 on May 2, 2017, amending CMMC § 13-311 in two respects which imposed new requirements on group home permit applicants only. First:

> The special use permit shall be issued by the director as a ministerial matter if the applicant is in compliance or has agreed to comply with subsections (a)(1) through (a)(14) above. At least ten (10) days prior to issuing a special use permit, the director shall cause written notice to be mailed to the owner of record and occupants of all properties withing 500 feet of the location of the group home. Prior to issuance of the special use permit, the director shall hold a public hearing for the purpose of receiving information regarding compliance with the applicable provisions of subsections (a) and (b).

(Trial Exs. 1672 at 11, 1666 at 3, CMMC § 13-311(b)). And second:

> (a)(1) An application for a group home is submitted to the director by the owner/operator of the group home. The application shall provide the following:
>> i. the name, address, phone number and driver's license number of the owner/operator;
>> ii. if the applicant and/or operator is a partnership, corporation, firm or association, then the applicant/operator shall provide the additional names and addresses as follows and such persons shall also sign the application:

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-1710 JVS (GJSx)                    Date   August 26, 2022

Title   The Ohio House LLC v. City of Costa Mesa

> a. every general partner of the partnership;
> b. every owner with a controlling interest in the corporation;
> c. the person designated by the officers of a corporation as set forth in
> a resolution of the corporation that is to be designated as the permit
> holder;
> iii. the license and permit history of the applicant(s), including whether such
> applicant(s), in previously operating a similar use in this or another city,
> county or state under license and/or permit, has had such license and/or
> permit revoked or suspended, and the reason therefore.

(Trial Exs. 1672 at 8, 1666 at 1, CMMC § 13-311(a)(1)(i)–(iii).).  This disclosure
requirement was imposed on CUP applicants by way of the operator's permit application.
(Trial Ex. 1668 at 1, CMMC § 9-374(a)(1)–(3).)

Although the amendment to § 13-311 requiring notice to *occupants* applied only to
special use permits for group homes in the R1 zone, the City applied the new notice
requirements to all group home applicants in the R1 and MFR zones, including Ohio
House.  (Trial Ex. 219b (letter from City to Ohio House advising that new notice
requirements in Ordinance 17-05 applied to CUPs for group homes with more than seven
occupants, including Ohio House).)  Between the adoption of Ordinance 17-05 in May
2017 and Ordinance 18-06 in September 2018, group homes and sober living homes were
the only land uses in the City required to give notice of public hearing to both owners *and*
*occupants* within a 500-foot radius.  (Trial Tr. April 6, 2022 at 92:22–94:9 (Vander
Dussen); Trial Ex. 835 at 24–25, CMMC § 13-29(d) (Public Notice); Trial Ex. 970 (Ord.
18-06).)

Starting with the adoption of Ordinance 17-05 in May 2017, group and sober living
home permit applicants were required to provide the corporate, ownership, and licensing
disclosures described above.  (Trial Ex. 1668, CMMC 9-374(a) (MFR CUPs); Ex. 1666,
CMMC 13-311(a)(1) (SUPs in R1 and MFR); Trial Tr. April 6, 2022 at 95:21–96:4
(Vander Dussen).)  That new disclosure requirement was imposed on group home and
sober living home land use applicants and no other land use applicants in the City.  (Trial
Tr. April 6, 2022 at 95:21–96:3 (Vander Dussen); Ex. 1662 at 5, CMMC 13-29(a).)

**C.    Ohio House was Subject to the City's New Group Home Regulations**

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

Ohio House applied for a conditional use permit to operate a sober living home and made a reasonable accommodation request, both of which the City denied because of the presence of another sober living home approximately 550 feet from the Wilson Street property. (Trial Ex. 111 at 189; Trial Ex. 112 at 440; Trial Exs. 188, 196, 907; Trial Tr. April 8, 2022, at 215:20–25, 217:2-16 (Le); Transcript Compendium at 751, 753; Trial Tr. April 13, 2022 at 81:24-82:6 (Le) (the only separation conflict that precluded Ohio House from obtaining its CUP was the City-approved group home at 165 East Wilson); Transcript Compendium at 1041–1042.)

The City planning staff reported to the Planning Commission on the Wilson Street Property's consistency with the General Plan:

The City's regulations are intended to preserve the residential character of the City's neighborhoods. This facility has demonstrated its compatibility with the neighborhood over the past three years.

(Trial Ex. 182 at 8; Trial Tr. April 7, 2022 at 77:12-78:12 (Vander Dussen); Transcript Compendium at 494–495.)

The City required Ohio House to resubmit public notice mailing labels to include all owners and *occupants* within a 500-foot radius of 115 E. Wilson Street. (See Trial Exh. 219b, 219c.) Ohio House complied. (See Trial Ex. 910 (actual mailing labels admitted but not filed).) The City also required Ohio House to comply with the expanded corporate and ownership application disclosure requirement. (Trial Exs. 219b, 909; Trial Tr. at 139:2–140:1, 146:10–20 (Stump); Transcript Compendium at pp. 520–521, 522.)

When the City denies a group home's application, like Ohio House's applications for a conditional use permit and reasonable accommodation, the group home becomes an illegal use operating without a permit. (Trial Tr. April 7, 2022 at 48:9-19 (Vander Dussen); Transcript Compendium at p. 465.) They become subject to enforcement, including citation, criminal prosecution, and civil abatement. (Id.; Trial Ex. 196 (City notice advising that failure to cease operations would result in code enforcement action "which may result in civil citation(s), criminal prosecution and/or civil action to abate violations of the Municipal Code").)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

Prior to its final denial of Ohio House's permit application, the City had never cited Ohio House's Wilson Street property for violating any City rule or regulation. (Trial Tr. April 7, 2022 at 157:24–158:8 (Stump); Transcript Compendium at 529–530.)  After the City Council denied Ohio House's CUP application and reasonable accommodation request, the City notified Ohio House that it must cease and desist operating its group home by September 9, 2019.  (Trial Ex. 196.)

Ohio House did not stop providing housing and the City commenced code enforcement.  (Trial Tr. April 7, 2022 at 151:4–152:9, 152:22–154:7 (Stump); Transcript Compendium at 525–526, 526–528; Trial Ex. 201.)  The City cited Ohio House for operating a "sober living/group home facility, without City approval" on September 27, 2019.  (See. e.g., Trial Ex. 201, at p. OH 833.)  It issued a second round of citations on October 24, a third on October 28, and a fourth on November 5.  (Id. at pp. OH 851, 869, 878.)  Thereafter, the City issued invoices demanding payment of those citations and past due notices (id. at pp. OH 831, 891, 950–51), and never responded to Ohio House's request for payment plan to pay the accumulating citations (Trial Tr. April 7, 2022 at 159:2–7 (Stump); Transcript Compendium at 531) .

**D.    Justification**

The Group Home Regulations were justified in their explicitly differential treatment of the disabled.

The operations of a group or sober living home satisfy the Costa Mesa Municipal Code's current definition of a boardinghouse and the current definition does not expressly exclude group or sober living homes.  (See Tr. Rec., Day 8, at 140:23–141:5.)

Any group or sober living home that rents out rooms under two or more separate agreements satisfies the City's current definition of boardinghouse, including Ohio House's operations at the Wilson Home from 2014 to the present.  (Id. at 141:6–17.)

Group and sober living home operators may apply for a CUP as a boardinghouse and their applications would be processed as such.  (Id. at 156:10–20.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

Since at least 2000, the City has regulated boardinghouses by requiring large boardinghouses to obtain a CUP to operate and imposing a separation requirement on them.  (Id. at 141:18–22.)

Even before 2014, Ohio House was required to obtain a CUP as a large boardinghouse when it was first established int 2012, but it did not do so. (Id. at 142:5–14.)

The required separation between boardinghouses (1,000 feet) is greater than that which is required between group homes (650 feet).  (Id. at 158:9–17.)  Under the City's group home ordinances, boardinghouses must be 1,000 feet from other boardinghouses *or* group homes.  (Id. at 158:21–159:8.) In contrast, group homes must be 650 feet from other group homes, but not boardinghouses.  (Id.)

The facially discriminatory provision actually advances the housing opportunities of persons with disabilities.

Any benefit that facially discriminatory provision provides to disabled persons in their housing opportunities clearly outweighs any burden that provision places on them.

### III.  CONCLUSIONS OF LAW

#### A.      Statute of Limitations

The City contends that Ohio House's § 65008 claim is time-barred because it was not served within the 90-day statute of limitations as imposed by California Government Code § 65009 ("§ 65009").  Ohio House disagrees, arguing that (1) its § 65008 claim is not the type of claim subject to § 65009's limitation, and (2) even if it was, the claim is based on the City's ongoing, continuing policy of zoning discrimination, not just a series of individual decisions.  (Pl.'s Br. at 5–6.)

Section 65009 provides that actions or proceedings "[t]o attack, review, set aside, void, or annul the decision of a legislative body to adopt or amend a zoning ordinance" or "on the matters listed in Sections 65901 and 65903, or to determine the reasonableness legality, or validity of any condition attached to a variance, conditional use permit, or any

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

other permit" may not "be maintained" unless it "is commenced and service is made on
the legislative body within 90 days after the legislative body's decision." Cal. Gov't
Code § 65009(c)(1)(B) and (E).

Government Code section 65009 "is intended 'to provide certainty for property
owners and local governments regarding decisions made pursuant to this division' (§
65009(a)(3)) and thus to alleviate the 'chilling effect on the confidence with which
property owners and local government can proceed with projects' (§ 65009(a)(2)) created
by potential legal challenges to local planning and zoning decisions." Travis v. Cnty. of
Santa Cruz, 33 Cal.4th 757, 765 (2004). "To this end, section 65009 establishes a short
statute of limitations, 90 days, applicable to actions challenging several types of local
planning and zoning decisions," as enumerated in the statute. Id.

"[T]o pinpoint when the statute of limitations began to run on [Ohio House's]
claims," and whether § 65009 applies, "one must determine what specific governmental
act or acts the [Ohio House] s[eeks] to challenge." Cnty. of Sonoma v. Sup. Ct., 190 Cal.
App. 4th 1312, 1324 (2010). When an action challenges a zoning ordinance itself, the
limitations period begins when the ordinance becomes effective. Id. (citing Arcadia Dev.
Co., 169 Cal. App. 4th at 261); Cal Gov't Code § 65009(c)(1)(B). But where an action
challenges an administrative decision applying an ordinance to a particular property (e.g.,
a permit denial), the time runs from the date of the final decision. Travis, 33 Cal. 4th at
768; Cal. Gov't Code § 65009(c)(1)(E). "It is the nature or gravemen of [an] action that
determines when the limitation begins, not the label the [plaintiff] affixes to its
pleadings." Cnty. of Sonoma, 190 Cal. App. 4th at 1329–30 (collecting cases); see also
MacGuire v. Hibernia S. &L. Soc., 23 Cal.2d 719, 733 (1944) (in determining whether a
statute of limitations applies, applicability depends on the "nature of the right sued upon
and not the form of action nor the relief demanded").

It is undisputed that Ohio House served this action more than 90 days after the
City's denial of its CUP application and enaction of the Ordinances. (Dkt. 1, 7 ("Ohio
House filed this action on September 9, 2019, within 90 days of the City Council's
August 6 denial of its CUP application, but the complaint was not served until 113 days
after that decision.).) Thus, if the Court finds that it seeks to challenge the denial of Ohio
House's CUP or the group home ordinances themselves, this action is untimely under
§ 65009. Nonetheless, Ohio House argues that its claim is not time-barred because it

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

does not challenge an act that triggers § 65009's 90-day statute of limitations, but the City's "administration of its ordinances by utilizing code enforcement citations and fines (and subsequent abatement action) to force closure of the Wilson Property." (Reply at 13.) The City responds that Ohio House's § 65008 is "based on an attack, review and requested annulment of the Group Home Regulations, which fits squarely within the 90-day limitation" and is thus time barred. (Opp'n at 18–19.)

Ohio House contends that its § 65008 claim falls outside the scope of § 65009. "The limitations periods set out in the statute are triggered by specific acts of local land use planning authorities." Cnty. of Sonoma, 190 Cal. App. 4th at 1324. The issue here is whether Ohio House's claim challenges such an act. Ohio House argues that does not, because "§ 65009's limitation period [] governs a prescribed list of land use decisions, not the exercise of municipal code enforcement power to cite, fine, and compel the closure of a dwelling." (Reply at 13.) In relevant part, § 65009 is triggered by a "decision of a legislative body to adopt or amend a zoning ordinance" (Cal. Gov't Code § 65009(c)(1)(B)) or "any decision . . . to determine the reasonableness, legality, or validity of any condition attached to a variance, conditional use permit, or any other permit" (§ 65009(c)(1)(E)). (Id.) So, Ohio House argues that it is not challenging a "decision" governed by § 65009, but rather "the exercise of municipal code enforcement power to cite, fine, and compel the closure of a dwelling." (Id.) In Ohio House's view, it is not challenging the Ordinances' enactment or the denial of its CUP (both of which would be time-barred "decisions" under § 65009) as shown by the fact that it is not asking the Court to invalidate the group home regulations or compel the City to grant Ohio House a CUP. (Id.) Instead, it asserts, that it seeks "limited, narrow relief arising directly from the City's 'administration of ordinances pursuant to any law" demonstrates that it is only challenging the City's code enforcement power. (Id.)

The City dismisses this framing as "creative semantics," and insists that Ohio House's § 65008 claim is essentially "a facial attack against the Group Home Regulations." (Opp'n at 19.) It argues that while "Ohio House seeks to attach its entire action to 'civil citations' and a nuisance abatement action i.e., enforcement actions," it truly seeks to challenge the ordinances themselves. (Id. at 20.) Thus, it insists, the 90-day limit statute of limitations began running upon the Ordinances enactment, and none of the City's enforcement conduct triggers a new limitations period. (Id.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-1710 JVS (GJSx)     Date   August 26, 2022

Title   The Ohio House LLC v. City of Costa Mesa

In <u>County of Sonoma</u>, a county defendant similarly argued that a cooperative's challenge to an ordinance's permit requirement was barred by § 65009. 190 Cal. App. 4th at 1322. There, the California appellate court concluded that the statute of limitations began to run upon the ordinance's enactment because the cooperative's claims were "based on a facial challenge." <u>Id.</u> at 1330.  The cooperative had sued the county for issuing a stop order against it for failing to comply with a county ordinance by obtaining a permit.  <u>Id.</u>  The cooperative insisted that it challenged the stop order, not the ordinance itself, and so the 90 days should be counted from stop order's issuance, rather than the ordinance's enactment.  <u>Id.</u>  However, the court rejected that argument, explaining that while the cooperative purported to challenge the ordinance both facially and as applied, its claim was truly "facial in nature," because it was based on an "'alleged defect [] in the [o]rdinance itself, not in the manner or circumstances in which it [was] being applied.'" <u>Id.</u> at 1325 (quoting <u>Travis</u>, 33 Cal. 4th at 768).  By challenging the issuance of the stop order, an enforcement action that was compelled by an ordinance, the cooperative was effectively challenging the ordinance itself.  <u>Id.</u> at 1329 ("[T]he Cooperative's claimed injury arose from the Ordinance itself, and the validity of the Ordinance was the only issue in the litigation.").  The court explained that the cooperative did not challenge a "final adjudicatory administrative decision" that would mark the beginning of a new 90-day period under § 65009(c)(1)(E).  <u>Id.</u> at 1326.  The stop order was not such a decision and there was no permit denial because the cooperative did not apply for a permit.  So, while that subdivision provides that "the limitations period for challenging the application of a land use regulation to a specific property runs from the date of the final adjudicatory administrative decision," "[n]o such decision exist[ed]." <u>Id.</u> at 1327 (citation omitted).  Because the cooperative did not challenge a "final adjudicatory administrative decision," its action did not fall within § 65009(c)(1)(E), and the statute of limitations began to run on the ordinance's effective date.

The enforcement actions that Ohio House purports to challenge, like the stop order in <u>County of Sonoma</u>, are not "final adjudicatory administrative decisions" that mark a new 90-day period under § 65009(c)(1)(E).  <u>See</u> 190 Cal. App. 4th at 1327.  Ohio House concedes this, arguing that, because it does not challenge a final adjudicatory decision or the facial validity of an ordinance, its Government Code § 65008 claim falls beyond the scope of § 65009.  In support of this reasoning, Ohio House points to § 65008's statement that "[n]o city . . . shall, in the enactment *or administration* of ordinances pursuant to any law" discriminate in certain ways.  Cal. Gov't. Code § 65008(b)(1) (emphasis added). In

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

contrast, § 65008 imposes a 90-day limit on challenges to a "the *decision* of a legislative body to *adopt or amend* a zoning ordinance." Id. at § 65009(c) (emphasis added). Ohio House argues that to conflate "administration" with "decisions" treats the "administration" provision of § 65008(b) as mere surplusage, nullifying § 65008(b)'s unambiguous text while broadening the reach of § 65009 beyond its plain text. Thus, it concludes, its challenge to the City's administration of its ordinances is actionable under § 65008, but not subject to § 65009's limitation period.

While there may be some § 65008 claims that are beyond the scope of § 65009, Ohio House's claim is not one. Ohio House's challenge, like the cooperative's claim in County of Sonoma, is based on alleged defects in the ordinances themselves, not in the manner or circumstances in which they are applied. See 190 Cal. App. 4th at 1327; see also Arcadia Dev. Co. v. City of Morgan Hill, 197 Cal. App. 4th 1526, 1535 (2011) (finding that plaintiff's challenge was "a facial challenge because the alleged defect [was] in the ordinance itself"). Ohio House's assurance that it does not challenge the ordinances' validity, but their administration by the City, is a distinction without a difference. The code enforcement actions that Ohio House challenges and seeks to enjoin are taken under and compelled by the group home ordinances. By challenging such actions, Ohio House effectively challenges the facial validity of the ordinances. See San Diego Unified Sch. Dist. v. Yee, 30 Cal. App. 5th 723, 736 (2018) (explaining that plaintiffs were "in substance and effect" challenging "the constitutionality of [the] statutes themselves" by challenging actions that were "compelled by and taken under the [] statutes"). Ohio House does not challenge any defect in the City's code enforcement that is distinct from the Ordinances themselves. Rather, it argues that the "group home regulations operated as intended." ( Pl.'s Br. at 21.) Nor does it complain of any injury beyond that which arose from the Ordinances' enactment. See Cnty. of Sonoma, 190 Cal. App. 4th at 1329 ("[T]he Cooperative's claimed injury arose from the Ordinance itself"); Travis, 33 Cal. 4th at 767 (same). In fact, Ohio House argues that "[a]s a matter of law, th[e] regulatory text and its enforcement against Ohio House is, standing alone, sufficient to establish grounds for an injunction under § 65008."

Next, Ohio House asserts that, even if the 90-day limit were to apply, its § 65008 claim is timely because it is based on the City's ongoing course of conduct, not just a series of individual decisions. (Pl.'s Br. at 6.) However, as explained above, Ohio House's challenge to the City's "ongoing course of conduct" is effectively a challenge to

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 19-1710 JVS (GJSx)              Date  August 26, 2022

Title  The Ohio House LLC v. City of Costa Mesa

the Ordinances themselves.  Moreover, Ohio House points to no other "decision" that could have initiated a new limitations period.  For example, while courts have found that subsequent "administrative decisions" marked the start of new limitations periods under § 65009(c)(1)(E), that is not the case here.  In fact, Ohio House concedes that claim would be barred by § 65009's 90-day limitation even if it began to run upon the CUP denial.  (Opp'n at 19–20; Mtn. at 5.)

Ohio House argues that "[t]he City's course of conduct establishes a type of continuing violation recognized in California – where a plaintiff alleges a systemic policy of discrimination against a protected class that was initiated prior to the running of the statute of limitations by continues into the limitations period to the detriment of the protected class."  (Mtn. at 7 (citing Alch v. Superior Ct., 122 Cal. App. 4th 339, 369 (2004); Carroll v. City & Cnty. of San Francisco, 41 Cal. App. 5th 805, 822 (2019).)  The cases Ohio House cites in support of this argument are inapposite—both recognizing a "continuing violation doctrine" that extends the statute of limitations in certain *employment* discrimination cases.  (Alch, 122 Cal. App. 4th at 368 ("The continuing violation doctrine . . . refers . . . to a number of different approaches . . . to extending the statute of limitations in employment discrimination cases.") (internal quotations omitted); Carroll, 41 Cal. App. 5th at 820 ("[T]he term 'continuing violation doctrine' refers loosely to a number of different approaches, in different contexts . . . to extending the statute of limitations in employment discrimination cases.")  The Court is not aware of, and the parties do not cite, any cases applying such a theory to allegedly discriminatory enforcement of a zoning ordinance.

In sum, Ohio House's § 65008 claim is based on a facial challenge to the Ordinances and must have been brought within 90 days of the Ordinances' effective date.  See Cal. Gov't Code § 65009(c)(1)(B); Cnty. of Sonoma, 190 Cal. App. at 1330.  The limitations period for facial challenges expired long before Ohio House brought this action, and so this action is time-barred under § 65009.  In any event, eve if the statute of limitations ran on the denial of the CUP, it is nevertheless time barred.

**B.     Effect of the Jury's Verdict**

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 19-1710 JVS (GJSx)                    Date    August 26, 2022

Title    The Ohio House LLC v. City of Costa Mesa

The City next argues that even if Ohio House's § 65008 claim is not time-barred, Ohio House's request for equitable relief is nonetheless foreclosed by the jury's findings of fact at trial. Opp'n at 13–14.

"[W]here legal claims tried by the jury and equitable claims tried by the court are 'based on the same set of facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'" Sanders v. City of Newport, 657 F.3d 772, 783 (9th Cir. 2011) (quoting Miller v. Fairchild Indus., Inc., 885 F.2d 498, 507 (9th Cir.1989)). "If, however, determining the equitable claims requires proof of a fact that the jury did not implicitly or expressly find, the district court must make its own determination." Allen v. Hyland's, Inc., 2021 WL 718295, at *4 (C.D. Cal. Feb. 23, 2021), aff'd, 2022 WL 1500795 (9th Cir. 2022) (citing Dollar Sys., Inc. v. Avcar Leasing Sys., Inc., 890 F.2d 165, 170–71 (9th Cir. 1989)).

Ohio House argues that it has established its § 65008 claim because:

(1)    "The plaint text of the City's group home regulations applied to Ohio House established that they were facially discriminatory as a matter of law" (Reply at 5; Mtn. at 10);

(2)    "The City failed, as a matter of law, to justify its facial discrimination" (Reply at 18).

Ohio House states that entry of judgment in its favor would not implicate the Seventh Amendment because the jury did not necessarily find that the group home regulations were justified, or that disability was not a motivating factor. (Mtn. at 9.) On summary judgment, the Court found that "[t]o the extent that the challenged provisions [of the group home regulations] explicitly treat Group Homes and Sober Living Homes differently from other dwellings that are not defined by disability status, they support a finding of facial discrimination." (Summary Judgment Order, Dkt. 245, at 18.) Thus, the Court concluded that "Ohio House ha[d] made out a prima facie case of intentional discrimination." (Id.) The remaining question was whether the City could establish that such differential treatment was justified. (Id. at 24.)

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

The City seemingly argues that the Court did not properly find that Ohio House established a prima facie case of intentional discrimination based on the Group Home Regulations' explicitly differential treatment of group homes for the disabled.  (See Opp'n at 11, 27.)  The City contends that "[w]hile this Court ascribed the term 'facially discriminatory' to the Group Home Regulations, the use of such term was inconsistent with the concept of liability and invalidity contained in the statutes and case law regarding facial discrimination." (Id. at 11 n.2.)  It argues that "[t]he Court's use of the term 'facial discrimination' merely meant 'different,' as opposed to worse" and "just because a law treats a person 'different,' does not necessarily lead to any liability or invalidity."  (Id.)  Thus, it concludes that the jury did not necessarily find that the group home regulations were justified in finding for the City on Ohio House's intentional discrimination claim.  (See id. ("[W]hether the jury found that the Group Home Regulations were justified or whether they did not actually treat disabled persons worse in the first place (and thus, were never facially discriminatory), the outcome is the same.").)

However, case law supports the Court's reasoning and shows that the jury did in fact find that the Group Home Regulations are justified.  (See Summary Judgment Order, at 18, 24 ("Because the Ordinances on their face treat Sober Living Homes and Group Homes differently than similar dwellings for non-disabled individuals (i.e., boardinghouses), Ohio House has made out a prima facie case of intentional discrimination" but a triable issue of fact remained "as to whether the provisions are justified.").) Moreover, if the jury found that the Group Home Regulations "did not actually treat disabled persons worse in the first place," as the City suggests, this is the same as finding that they were "justified."  This analysis is exemplified by Sailboat Bend, the Southern District of Florida case presented by the City that similarly, explicitly treated the disabled *differently* (but not necessarily worse).  (Opp'n at 29, 30–31, 32 (citing 479 F. Supp. 3d 1298 (S.D. Fl. Aug. 14, 2020)).)  In that case, the Court described a "two-step inquiry" to determine whether an ordinance that expressly treats the disabled differently from other residents violates the ADA and the FHA. Sailboat Bend, 479 F. Supp. at 1315.  It explained that "step one" requires the plaintiff to make "*a prima facie* case that an ordinance facially discriminates against those with disabilities," and at step two, the burden shifts to the government to show justification.  Id.  The court in that case found that the plaintiffs had met "step one" (i.e., established "*a prima facie* case that the ordinance facially discriminates") by showing

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

that it "treats people with disabilities *differently*," but concluded that the ordinance was nonetheless "justified under step two." Id. at 1317; see also Yellowstone Womens First Step House, Inc. v. City of Costa Mesa, 2015 WL 13764131, at *5–6 (C.D. Cal. Oct. 8, 2015) ("The Ordinance clearly treats individuals in drug and/or alcohol recovery differently than others," but "the City may justify the differential treatment upon a showing that 'the restriction benefits the protected class.'") (quoting Cmty. House, 490 F.3d at 1050)); Harper v. Lindon City, 2019 U.S. Dist. LEXIS 86824, at *14 (D. Utah May 21, 2019) ("While it is clear that [the city code] sections treat the handicapped differently, the differential treatment is actually 'beneficial to, rather than discriminatory against, the handicapped' and thus "not unlawful based on . . . justification.").

Here, the Court similarly found that Ohio House met "step one" (i.e., established a prima facie case that the group home regulations facially discriminate) by showing that the group home regulations singled out group homes for the disabled and uniquely subjected them to certain rules, but that they may nonetheless be justified. (See Summary Judgment Order, at 18, 24; Jury Instruction 19.) To the extent the City takes issue with the Court's use of the term "facially discriminatory" to describe provisions that expressly treat members of a protected group differently, but not necessarily worse, than non-members, the Court made clear that this only amounted to a prima facie showing of intentional discrimination, not necessarily liability. While courts are not always consistent in labeling such regulations, it is clear that, regardless of the label, express differential treatment is sufficient to establish a prima facie case of intentional discrimination. See, e.g., Diamond House of SE Idaho, LLC v. City of Ammon, 381 F. Supp. 3d 1262, 1274, 77 (D. Id. Apr. 5, 2019) ("An ordinance is 'facially discriminatory' if it expressly treats members of a protected group differently than others who are similarly situated" and "may only be justified if the restriction benefits the protected class, or if the restriction responds to legitimate safety concerns."); Bangerter v. Orem City Corp., 46 F.3d 1491, 1500 (10th Cir. 1995) (holding that "there [could] be no doubt that" laws that "facially single[d] out the handicapped and appl[ied] different rules to them" were "discriminatory," but that "[w]hether such discrimination [was] legal or illegal remain[ed] to be determined"); Harper v. Lindon City, 2019 U.S. Dist. LEXIS 86824, at *14 (D. Utah May 21, 2019) ("[O]rdinances that single out the handicapped and apply different rules to them are facially discriminatory," but may still be lawful if "the differential treatment is actually beneficial to, rather than discriminatory against, the handicapped."); cf. Swanson v. City of Plano, 2020 U.S. Dist. LEXIS 226897, at *18

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

(E.D. Tex. Dec. 3, 2020) ("Though the Ordinance discriminates in the sense that it treats people with disabilities differently, it does not discriminate under the FHA because the Ordinance treats individuals with disabilities better than those without disabilities"). The Court never suggested that such a finding alone was sufficient to justify liability, and the Jury Instructions were clear to that effect. (See Jury Instruction 19, 20.)

As to justification, the Court found that it was not apparent from the text of the regulations whether the regulations were justified, rather "[t]he parties [had] presented conflicting evidence that establishe[d] a genuine dispute as to whether the Group Home Regulations benefit . . . the disabled" or "were adopted in response to legitimate safety concerns." (Summary Judgment Order, at 23–24.) The zoning ordinances prescribed both benefits and burdens on the disabled such that it was not clear from the text of the ordinances whether their express differential treatment of the disabled was legally justified. Id.; cf. Sailboat Bend, 479 F. Supp. at 1320 (finding that a zoning ordinance were justified based on "benefit" when the text of the ordinance showed that "the City carved out an exception" to the general rule that "four or more *unrelated* individuals may not live together within residentially zoned neighborhoods" "allowing [disabled people] to live in residentially zoned neighborhoods *as of right*, so long as they compl[ied] with certain basic conditions."). For example, a boardinghouse is categorized as "small" or "large" based on the number of rooms being rented. (Trial Ex. 1655, Ordinance 15-11, at 6 ("Boardinghouse, small means *two (2) or fewer rooms* being rented," "[b]oardinghouse, large means *three (3) to six (6) rooms* being rented," and "[b]oardinghouses renting more than 6 rooms are prohibited").) Small boardinghouses are permitted as a matter of right in every multi-family district (R2-MD, R2-HD, R3, PDR-LD, PDR-MD, PDR-HD, PDR-NCM, PDC, and PDI), and large boardinghouses may only operate in those districts with a CUP, but are prohibited in the PDR-LD zone. Id. at 3. Group homes with six or fewer *residents* may operate in those multi-family districts, plus the R1 district, only if they acquire a SUP, and may operate in the I&R district as a matter of right. Id. Group homes with seven or more *residents*, however, are prohibited from operating in the R1 district, and may only operate in the multifamily districts if they obtain a CUP and an operator's permit, and the I&R district as a matter of right. (Trial Ex. 1667 ("Land Use Matrix"), at 2–3; CMMC § 13-323.) Further, the endpoints used in calculating the distance requirements are not the same and it is not clear based on the face of the provisions which is more restrictive—while the end points for boardinghouse separation is measured from other boardinghouses, for group and sober living homes, the end points are measured

JS - 6

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |

| | |
|---|---|
| Title | The Ohio House LLC v. City of Costa Mesa |

from other such homes and state licensed alcohol or drug abuse recovery or treatment facilities. (See Trial Ex. 1663, at 21 (Large boardinghouses shall be located at least one thousand (1,000) feet away from any other boardinghouse"; "Six-hundred-fifty foot separation required between sober living homes, *or* from state licensed alcohol or drug abuse recovery or treatment facilities") (emphasis added).) Finally, Ohio House argued that there was no record of a boardinghouse ever even applying for a CUP, and the City did not provide any such evidence on summary judgment. (See Summary Judgment Order, at 23.)

Jury Instruction 19, which pertains to Ohio House's discrimination claims under the FHA and FEHA, provides that the jury "must accept as true that Ohio House has offered sufficient evidence to prove that each of the following provisions of the City's group home regulations are facially discriminatory:

1. The Land Use Matrix prohibiting Group Homes from locating in any residential zone without a permit.

2. Requiring Group Homes to obtain a Conditional Use Permit and prohibiting them from locating within 650 feet of any other Group Home.

3. Requiring Group Homes and no other housing operators to obtain an Operator's Permit.

4. Requiring only Group Homes to provide notice of the hearing on their Conditional Use Permit application to owners and *occupants* within 500 feet of the Group Home.

5. Requiring only Group Homes to provide detailed corporate ownership and licensing history to apply for a residential use permit.

6. Imposing restrictions on residents of Group Homes not imposed on residents of other residential uses. and,

7. Imposing additional restrictions on residents of Sober Living Homes than imposed on residents of other residential uses."

JS - 6

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-1710 JVS (GJSx)                    Date   August 26, 2022

Title      The Ohio House LLC v. City of Costa Mesa

(Jury Instruction 19, Dkt. 423, at 24–25.)  The instruction further states that the jurors would "be asked to determine whether the City has proven by a preponderance of the evidence that these provisions are justified."  (Id. at 25.)

Ohio House now argues that "[t]he Court did not instruct the jury that it had already made a finding on facial discrimination, or that the jury must accept as true that Ohio House had established that the regulations were in fact facially discriminatory and that the only question was justification." (Mtn. at 8.)  It contends that "[t]he difference was emphasized to the jury after the City's counsel objected to Ohio House's counsel's argument that 'the judge instructed you that it's facially discriminatory,' and the Court re-instructed the jury."  (Id. (citing Tr. Rec., Apr. 14, 2022, at 102:12–17, 105:17–106:2).)  However, in "re-instructing the jury" the Court merely pointed the jurors to Instruction 19 and re-read, "In particular, you must accept as true that Ohio House has presented sufficient evidence to prove that each of the following provisions of the City's group home regulations are facially discriminatory."  (Tr. Rec., Apr. 14, 2022, at 107:5–11.)  Ohio House argues that "[g]iven the instructions, the Court cannot assume that the jury's advisory verdict included an implicit finding that the City established its affirmative defense of justification because it cannot be assumed that the jury found the group home regulations were facially discriminatory in the first place." (Mtn. at 9.)  The Court disagrees.  Contrary to Ohio House's assertions, the jury instructions make clear that the jury was to accept that Ohio House had met its burden of showing that the group home regulations were facially discriminatory, and that the only remaining question was whether they were justified.  (See Jury Instructions 19 and 20.)

The Special Verdict asked the jury: "Do you find by a preponderance of the evidence that Plaintiff Ohio House, LLC proved that Defendant City of Costa Mesa engaged in discrimination because of disability in violation of the Fair Housing Act or the Fair Employment and Housing Act?"  (Question 1, Dkt. 439.)  The jury answered "no" as to both statutes.  (Id.)  To make this determination, the jury necessarily must have found that the City's facial discrimination was legally justified.  Further, to determine whether facial discrimination is justified, the same standard applies under the FHA, FEHA, and Cal. Gov't Code § 65008.

Ohio House argues that "[t]he City failed, *as a matter of law*, to justify its facial discrimination."  (Mtn. at 17.)  It argues that "[t]he only two justifications with any

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 19-1710 JVS (GJSx)          Date   August 26, 2022

Title   The Ohio House LLC v. City of Costa Mesa

potential to satisfy <u>Cmty. House</u> are protecting residents, and (if legally cognizable), preventing instutionalization" but "[t]he City failed to offer any *evidence* to allow a finding that its group home regulations did either of those things." <u>Id.</u> at 19.

Jury Instruction 20, states that "[t]he City contends that the facial discrimination of its group home regulations is justified." (Jury Instruction 20, Dkt. 423, at 26.) It provides that, in order to establish that the group home regulations are justified, the City must prove the following elements:

1.   The group home regulations benefit persons with disabilities in their housing opportunities; or

2.   The group home regulations respond to legitimate safety concerns raised by the individuals affected, rather than being based on stereotypes.

<u>Id.</u>

*1.   Benefit Persons with Disabilities*

As to "benefit," the Court instructed the jury that:

In order to prove that its group home regulations benefit person with disabilities, the City has the burden of proving that the conditions, restrictions, or requirements imposed by each facially discriminatory provision satisfy [each] of the following elements:

1.   The facially discriminatory provision actually advances the housing opportunities of persons with disabilities, and

2.   Any benefit that facially discriminatory provision provides to disabled persons in their housing opportunities clearly outweighs any burden that provision places on them.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx)) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa | | |

3.      With respect to Ohio House's FEHA claim only, the City's facially discriminatory regulation also must be the "least restrictive means of achieving" the City's identified purpose.

The group home regulations do not "benefit" persons with disabilities if they restrict or deny housing opportunities make unavailable or deny housing to persons with disabilities.

(Jury Instruction 22, Dkt. 423 at 28.)

In support of its argument that the Group Home Regulations benefit people with disabilities, the City argued that group homes, including Ohio House, are "boardinghouses" that are accorded more favorable treatment than other boardinghouses that are not for the disabled. (See Trial Tr., Closing, at 1209:2–24; Opp'n 35.) The City contends that "[w]ithout the Group Home Regulations Ohio House [would be] more restricted in opportunities to provide housing (it could not rent more than six rooms, or to more than six people, it could never operate in the R1 district, and it needs to be at least 1,000 feet from any other group home/boardinghouse), but with the Group Home Regulations it has more opportunities (it can rent unlimited rooms, more than six people without a set limit, it could operate in the R1 district - in fact one of its properties does so with a permit from the City, and it only needs to be 650 feet away." (Opp'n at 35.)  Thus, it argued, "[h]aving to obtain an Operators Permit and give additional information to the City are insufficient restrictions when the alternative is not being able to operate at all, which would be the case without the Group Home Regulations."  (Opp'n at 32.)

Ohio House argues that "the purported 'benefit' [of] providing additional housing opportunities to group homes does not exist as a matter of law," because "[i]t rested entirely on the prospective application of the ordinances" such that any "increase in 'opportunities' as compared to boardinghouses . . . was only to group homes that did not exist at the time the City adopted Ordinance 15-11." (Mtn. at 20.)  It argues that "the City fails to explain how the group home regulations 'benefitted' Ohio House itself when Ohio House, along with every group home CUP applicant located less than 650 feet away from another permitted group home or licensed drug and alcohol treatment facility, had its CUP and reasonable accommodation request denied and was ordered to cease operating pursuant to those regulations."  (Reply at 20.)  Despite Ohio House's

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |

| | |
|---|---|
| Title | The Ohio House LLC v. City of Costa Mesa |

contention, the City's "benefit" theory is not foreclosed as a matter of law.  If the jury found that the Group Home Regulations "actually advance[] the housing opportunities of persons with disabilities," that the benefit "clearly outweighs any burden that provision places on" the disabled, and that the Regulations were "the 'least restrictive means of achieving' the City's identified purpose," it could conclude that the Group Home Regulations were valid and justified.  (See Jury Instruction 22, Dkt. 423 at 28.)  To what extent they benefitted existing group homes as compared to prospective group homes does not affect this finding.  The jury could properly conclude that the Group Home Regulations allowed group and sober living homes a greater *opportunity* to operate, and that benefit clearly outweighed the burdens it placed on the disabled and was the least restrictive means of achieving that purpose.  See Yellowstone Womens First Step House, Inc. v. City of Costa Mesa, 2015 U.S. Dist. LEXIS 194308, at *14 (C.D. Cal. Oct. 8, 2015) (finding that an ordinance that clearly treated disabled individuals differently than others was justified because it "benefit[ted] individuals with disabilities by providing them with [] alternative housing opportunities that d[id] not exist to others under [a] preexisting general ban on large boardinghouses in R-1 zones" because "[g]roup homes . . . [could] operate in R-1 zones provided that they obtain[ed] a special use permit"); Sailboat Bend, 479 F. Supp. 3d at 1319 (finding that a zoning ordinance was justified by "benefit," because "[w]hile [a sober living home] may need 1,000 feet of separation to operate in a residential district, similar homes of non-disabled persons are not even provided the *opportunity* to live in those same residential districts").

        Substantial evidence was presented at trial that the jury could have relied upon in determining that the group home regulations benefit persons with disabilities in their housing opportunities.  The jury heard from Economic and Development Services Director, Jennifer Le, who testified that the operations of a group or sober living home satisfy the Costa Mesa Municipal Code's current definition of a boardinghouse and that the current definition does not expressly excluded group or sober living homes.  (See Tr. Rec., Day 8, at 140:23–141:5.)  She testified that any group or sober living home that rents out rooms under two or more separate agreements satisfies the City's current definition of boardinghouse, including Ohio House's operations at the Wilson Home from 2014 to the present.  (Id. at 141:6–17.)  She further testified that group and sober living home operators may apply for a CUP as a boardinghouse and that their applications would be processed as such.  (Id. at 156:10–20.)  Further, Le testified that since at least 2000, the City has regulated boardinghouses by requiring large

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

Case No.   SACV 19-1710 JVS (GJSx))          Date   August 26, 2022

Title   The Ohio House LLC v. City of Costa Mesa

boardinghouses to obtain a CUP to operate and imposing a separation requirement on them. (Id. at 141:18–22.) Even before 2014, Ohio House was required to obtain a CUP as a large boardinghouse when it was first established int 2012, but it did not do so. (Id. at 142:5–14.) The required separation between boardinghouses (1,000 feet) is greater than that which is required between group homes (650 feet). (Id. at 158:9–17.) Under the City's group home ordinances, boardinghouses must be 1,000 feet from other boardinghouses *or* group homes. (Id. at 158:21–159:8.) In contrast, group homes must be 650 feet from other group homes, but not boardinghouses. (Id.)

Based on this substantial evidence, the jury could have reasonably concluded that the Group Home Regulations were justified in their explicitly differential treatment of the disabled.

### 2. *Legitimate Safety Concerns*

As to whether the Group Home Regulations were justified by legitimate safety concerns, the Court instructed the jury:

To determine whether a facially discriminatory provision is justified by safety concerns, you should consider

    (1)    the nature, duration, and severity of the risk of injury;

    (2)    the probability that injury will actually occur; and

    (3)    whether there are less discriminatory methods for reducing the threat.

Restrictions on persons with disabilities which are not based on an individualized assessment or risk are not justified.

(Jury Instruction 24, Dkt. 423, at 30.)

The parties do not squarely address this justification in their briefs. (See generally, Pl's Br., Opp'n, and Reply.) However, as the Court already found that substantial evidence supported the jury's finding that the Group Home Regulations were justified, it

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

need not also find that there was substantial evidence to support such a finding under the "safety" prong.

Accordingly, the jury had substantial evidence before it to find that the Group Home Regulations' differential treatment of Group and Sober Living Homes was justified.

In finding that Ohio House had not proven that the City "engaged in discrimination because of disability in violation of the Fair Housing Act or the Fair Employment and Housing Act," (Special Verdict, at 1.) the jury conclusively found that the Group Home Regulations' differential treatment of group and sober living homes was justified. Because this conclusion is supported by substantial evidence, it must be upheld. See Harper v. City of Los Angeles, 533 F.3d 1010, 1021 (9th Cir. 2008) ("'A jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion.'") (quoting Johnson v. Paradise Valley Unified Sch. Dist., 251 F.3d 1222, 1227-28 (9th Cir. 2001)). The Court thus declines to disturb the jury's finding that the Group Home Regulations are legally justified.

The parties agree that justification is a defense to disparate treatment claims under the FHA, FEHA, and Gov't Code § 65008. (Reply at 8 ("That facial discrimination establishes that the regulations (and their enforcement against Ohio House under § 65008) constituted discrimination on the basis of disability unless adequately justified."); Mtn. at 3 ("If the record demonstrates that the City seeks to enforce facially discriminatory regulations against Ohio House, then the City may avoid liability under § 65008 only if it proves that those regulations [] either objectively benefit a protected class or responds to legitimate safety concerns raised by the individuals affected by the facially discriminatory policy, rather than being based on stereotypes about them."); Opp'n at 9–10.)

Based on this substantial evidence, the jury could have reasonably concluded that the Group Home Regulations were justified in their explicitly differential treatment of the disabled.

JS - 6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

In sum, the jury's factual findings preclude a finding of liability as to Ohio House's § 65008 claim. The Court concludes that it is bound by the jury's finding that the City's sober living housing policy was justified, and thus did not violate any of the statutes advanced by Ohio House.

## C. Advisory Jury Verdict

The jury returned an advisory verdict in favor of the City on Ohio House's § 65008 claim. (Dkt. 439.)

When a claim is submitted to an advisory jury, "the court is free to accept or reject the jury's advisory verdict in making its own findings." Harris v. Sec'y. U.S. Dep't of Army, 119 F.3d 1313, 1320 (8th Cir. 1997); compare 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2335 (3d ed. 2019) ("An advisory jury is an aid to the court in discharging its functions.") with Hunter v. Town of Mocksville, 897 F.3d 538, 563 (4th Cir. 2018) (an advisory verdict "is of no binding legal significance") and 9 Charles A. Wright et al., Federal 26  Practice & Procedure § 2335 (3d ed.) (courts finding deference owed to an advisory verdict "misconceive the function of an advisory jury and seem to overlook the complete freedom the trial judge has in using or disregarding its findings"). While the Court has conducted its own analysis, the Court notes that the jury's advisory verdict also supports the Court's conclusion that Ohio House has failed to prove a violation of § 65008.

\* \* \* \* \* \* \* \*

To summarize the Court's conclusions of law:

1. Ohio Houses' claims are time-barred under Government Code § 65009(c)(1)(B).

2. The City group home policies did not violate the Fair Housing Act, California's Fair Employment and Housing Act, or California Government Code § 65008.

3. While the jury's verdict on the Government Code claim is only advisory, it is consonant with the Court's independent conclusion that the City did not violate

JS - 6

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 19-1710 JVS (GJSx)) | Date | August 26, 2022 |
|---|---|---|---|

| Title | The Ohio House LLC v. City of Costa Mesa |
|---|---|

Government Code § 65008.

### IV. CONCLUSION

Consistent with the findings of fact and conclusions of law set forth, the Court finds for the City and against Ohio House on the Gov't Code § 65008 claim. Ohio House's request for judgment on its claim is therefore denied. Because this order concludes this action in its entirety as to all parties and all claims, the Court may now enter final judgment. See Fed. R. Civ. 52(a)(1); Fed. R. Civ. P. 58. The City is directed to lodge a proposed final judgment within seven (7) days.

**IT IS SO ORDERED.**