## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
| Title | The Ohio House, LLC v. City of Costa Mesa | | |

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS] <u>Order Regarding Renewed Motion for Judgment as a Matter of Law</u> [467]**

Plaintiff, The Ohio House LLC ("Ohio House"), renews its motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b) or in the alternative, moves for a new trial under Fed. R. Civ. P. 59(a)(1). (Dkt. No. 467). Defendant, City of Costa Mesa ("the City") opposed. (Dkt. No. 470). Ohio House replied. (Dkt No. 471). Counsel submitted on the tentative ruling.

For the following reasons, the Court **DENIES** the motion.

### I. BACKGROUND

Ohio House brought this action against the City for alleged discrimination against disabled persons in recovery based on practices and patterns under the federal Fair Housing Act ("FHA"), California's Fair Employment and Housing Act ("FEHA"), and California Government Code § 65008. (See Third Amended Complaint ("TAC"), Dkt. No. 45). Ohio House challenged multiple provisions of the City's zoning ordinances and regulations.[1]

The following facts are taken from the Court's previous findings of facts and law.

---

[1] Specifically, the ordinances are 14-13, 15-11, and 17-05, and the corresponding municipal codes sections 13-16, 13-30, 13-200.60 to .63, 13-310 to -313, 13-320 to -325, and 9-370 to -378 ("Group Home Regulations"); section 13-16 ("Boardinghouse" definition); section 13-30 ("Land Use Matrix" restricting boardinghouses).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
|---|---|---|---|

| Title | The Ohio House, LLC v. City of Costa Mesa |
|---|---|

(See Dkt. 457).

Ohio House operates a men's structured sober living environment in Costa Mesa, which consists of five units with an average of six to eight residents and one house manager at any given time. To reside at Ohio House, residents agree to strict rules, including abstinence from substances and complying with parking, house, volunteer, and "good neighbor" policies.

The City enacted Ordinance 15-11 to "preserve the residential character" of the City's residential neighborhood and to "further the purposes of the FEHA and FHAA." (Ordinance 15-11, Dkt. No 443-5, at 28). The City's municipal code defines a "group home" as a facility that is "being used as a supportive living environment for persons considered handicapped under state or federal law." A "sober living home" is a subset of group homes for persons recovering from addiction. A "boardinghouse" is a residence or dwelling "other than a hotel, wherein rooms are rented under two (2) or more separate [agreements]." A small boardinghouse rents two or fewer rooms while a large boardinghouse rents three (3) to six (6) rooms.

Small group homes (six or fewer residents) need a special use permit to operate in a residential zone. Large group homes (seven or more) need a conditional use permit and an operating permit to operate within a residential zone. Group homes or sober living homes must be 650 feet from any other group home or sober living home. Large boardinghouses are permitted to operate only if it obtains a conditional use permit and cannot operate in single-family residential zones. Boardinghouses must be 1,000 feet from other

Ohio House applied for a conditional use permit to operate as sober living home and applied for a reasonable accommodation request, both of which were denied. Ohio House could not satisfy the 650-foot separate requirement because it was in the presence of approximately 550 feet from another sober living home. Because Ohio House was operating without a permit, it received numerous citations.

On April 13, 2022, Ohio House made its Rule 50(a) motion before the case was submitted to the jury. (Dkt. No. 442, at 1108). The Court orally denied both Rule 50 motions by Ohio House (Dkt. No. 414) and the City (Dkt. No. 410), but reserved the statute of limitations issue with respect to Ohio House's § 65009 claim. (See Dkt.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |

| | |
|---|---|
| Title | The Ohio House, LLC v. City of Costa Mesa |

442, at 1118–19).  After an eleven-day jury trial, the jury found in favor of the City on Ohio House's claims under the FHA and the FEHA on April 18, 2022.  (Dkt. No. 425).  The Court issued an order in the City's favor on Ohio House's section 65008 claim on August 26, 2022.  (Dkt. No. 457).

The Court entered final judgment on the merits in the City's favor on Ohio House's FEHA and FHA claims on September 6, 2022.  (Dkt. No. 462).  Within twenty-eight days, Ohio House renewed its motion for judgment as a matter of law.  (Dkt. Nos. 467, 414).  Ohio House now seeks judgment as a matter of law on its FEHA and FHA claims.

## II. LEGAL STANDARD

*A.     Renewed Motion for Judgment as a Matter of Law: Rule 50(b)*

Pursuant to Fed. R. Civ. P. 50(a), a motion for judgment as a matter of law must be made before the case is submitted to the jury and must specify the judgment sought and the law and facts that entitle the movant to the judgment.  Fed. R. Civ. P. 50(a).  If the Court does not grant the motion, then "the court is considered to have submitted the action to the jury subject to the court's later  deciding the legal questions raised by the motion."  EEOC v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009); Zion v. Cty. of Orange, No. 8:14-cv-01134, 2019 U.S. Dist. LEXIS 228259, at *15 (C.D. Cal. Apr. 17, 2019).

A party may move to renew its motion for judgment as a matter of law under Fed. R. Civ. P. 50(a) within twenty-eight days after the entry of judgment, or if the motion addresses a jury issue not decided by a verdict, no later than twenty-eight days after the jury was discharged.  Fed. R. Civ. P. 50(b).  It may also move in the alternative a request for a new trial under Fed. R. Civ. P. 59.  Id.

A moving party is entitled to judgment as a matter of law if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion that is contrary to the jury's verdict.  E.E.O.C. v. Go Daddy Software, Inc., 581 F.3d 951, 961 (9th Cir. 2009).  A jury's verdict "must be upheld" if it is supported by substantial evidence, even where it "is possible to draw a contrary conclusions."  Id.  In ruling on a motion for judgment as a matter of law, the court may: "(a) allow the judgment to stand, (b) order a new trial, or (c) direct entry of judgment as a matter of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:19-cv-01710-JVS-GJS                    Date   November 16, 2022

Title   The Ohio House, LLC v. City of Costa Mesa

law." White v. Ford Motor Co., 312 F.3d 998, 1010 (9th Cir. 2002).  Judgment is appropriate "if there is no legally sufficient basis for a reasonable jury to find for that party on that issue."  Costa v. Desert Palace, Inc., 299 F.3d 838, 859 (9th Cir. 2002). Additionally, when making its determination, the Court cannot "Make credibility determinations" and "must disregard all evidence favorable to the moving party that the jury is not required to believe."  Tan Lam v. City of Los Banos, 976 F.3d 986, 995 (9th Cir. 2020) (quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 159–51 (2000).

   B.     *Motion for New Trial*: *Rule 59(a)*

   Pursuant to Fed. R. Civ. P. 59(a), in an action in which there has been a jury trial, a new trial may be granted "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a). Courts may grant new trials, "even though the verdict is supported by substantial evidence, if the verdict is contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial court, a miscarriage of justice."  United States v. 4.0 Acres of Land, 175 F.3d 1133, 1139 (9th Cir. 1999) (internal quotations omitted).  Authority to grant a new trial "is confided almost entirely to the exercise of discretion on the part of the trial court." Allied Chem. Corp. v. Daiflon, 449 U.S. 33, 36 (1980) (per curiam).

### III. DISCUSSION

   A.     *Request for Judicial Notice*[2]

   Ohio House requests the Court take judicial notice of various documents, including letters from the California Department of Housing and Community Development, excerpts from the City's "Housing Element Update," and a notice of public hearing. (Dkts. Nos. 472, 474).  The City did not oppose the request. These documents are publicly available.

---

[2] Notwithstanding the Court's treatment of Ohio House's request for judicial notice, the Court has substantial doubts as to whether a party is permitted to expand the evidentiary record with post trial evidence that neither the jury nor the Court has an opportunity to consider at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     8:19-cv-01710-JVS-GJS                            Date     November 16, 2022

Title     The Ohio House, LLC v. City of Costa Mesa

To the extent the Court relies on these documents, the Court grants the requests for the documents.  Such documents are publicly available records whose authenticity is not contested.  See Lee v. City of Los Angeles, 250 F.3d 668, 688–89 (9th Cir. 2001); Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998 (9th Cir. 2010); Fed. R. Evid. 201(b).  To the extent that the Court does not rely on documents included in the request, the request is **DENIED** as moot.

> **B.**     *Renewed Motion for Judgment as a Matter of Law*

Now Ohio House seeks judgment as a matter of law on five claims: its (1) facial discrimination claim; (2) discriminatory statements claim; (3) pattern or practices claim; (4) interference claims; and (5) reasonable-accommodation claim.  For the following reasons, the Court finds that under Fed. R. Civ. P. 50(b), there was adequate evidence to support a reasonable jury's verdict that Ohio House failed to establish its claims.

> **1.**     Facial Discrimination Claim

The City's regulation, which treats disabled persons differently on its face, can be justified only if the jury found that the restriction either "benefitted" disabled persons or responded to legitimate safety concerns, rather than being based on stereotypes.  Cmty. House, Inc. v. City of Boise, 490 F.3d 1041, 1050 (9th Cir. 2007).  The burden lies with defendants to justify the differential treatment.  Id.

The jury found that Ohio House failed to establish that the City engaged in discrimination on the basis of disability under the FEA and FHA (Special Verdict, Question No. 1, Dkt. No. 427).  To reach this conclusion, the jury necessarily must have found that the City's regulations were legally justified.

Ohio House argues that judgment as a matter of law is warranted for three reasons.  First, the City offered only proof that boardinghouses received less benefits than group homes despite the Court's clear instruction that the City could not justify its facially discriminatory regulation on the basis of "worse treatment" of others.  Second, even if the City could justify its regulation on the basis of worse treatment, the City failed to show that the text of the ordinances provided benefits to disabled persons.  Third, the City failed to provide legally cognizable justifications.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     8:19-cv-01710-JVS-GJS                          Date     November 16, 2022

Title     The Ohio House, LLC v. City of Costa Mesa

In relevant part of the Court's August 26, 2022 order, the Court previously found that  substantial evidence was presented to allow the jury to reasonably conclude that the City's regulations were justified in their explicitly differential treatment.  (See Order on Entry of Judgment 25–26, Dkt. No. 457).  The Court renews that finding here.

### a.     Proof of Benefits Based on Evidence

At trial, the Court instructed the jury that "[t]he City may not justify the facial discrimination of its group home regulations by claiming that it treats others less favorably than it treats group homes for persons with disabilities."  (Jury Instruction No. 26, Dkt. 423).  It also instructed the jury that the regulations do not "benefit" disabled persons "if they restrict or deny housing opportunities or otherwise make unavailable or deny housing to persons with disabilities."  (Jury Instruction No. 22).

Substantial evidence was presented at trial that would allow the jury to conclude that the regulations "benefitted" disabled persons.  The City presented testimonial evidence by Jennifer Le, the City's Economic and Development Services Director, that group homes received certain benefits of operating within a single-family residential ("R1") zone, renting rooms without limit, and having a smaller separation requirement, all of which were not offered to boardinghouses.  (Apr. 12, 2022 Trial Tr. 158:9–161:2, Dkt. No. 447, at 914–17).  The City also points to Ohio House's expert Brian Connolly's testimony as further proof that Ohio House, unlike boardinghouses, was not subject to a six-room limit.  (Apr. 5, 2022, Tr. 188:5–189:4).  While Ohio House argues that Mr. Connolly did not testify to regulations effective between 2014 and 2022, his testimony shows that he examined the twentieth ordinance passed by the City in 2021, (id. at 175:4–9), which imposed a six-person limitation on large boardinghouses, (id. at 177:16–21), and admitted that group homes were offered the "benefit" of renting out more than six rooms, (id. at 188:7–24).

Based on the foregoing, the "benefits" afforded to group homes established by evidence presented were threefold: (1) the ability to operate in a single-family residential zone; (2) a smaller separation requirement; and (3) no limitation on occupancy or rented rooms.  Boardinghouses, on the other hand, were prohibited from operating in single-family residential zones, had a larger separation requirement with more end points, and were subject to a six-person and six-room limit.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:19-cv-01710-JVS-GJS                    Date   November 16, 2022

Title   The Ohio House, LLC v. City of Costa Mesa

Therefore the issue is whether such evidence presented reflected no more than mere "worse treatment of others."   The Court concludes that the foregoing evidence constitutes more than simply "worse treatment."   It is true that these opportunities were not afforded to boardinghouses, so in that sense, boardinghouses could not avail themselves of the "benefit" of operating in a single-family zone or renting unlimited rooms.   But Ohio House fails to identify what it believes would have been necessary for group homes to have "benefitted," if not receiving the foregoing opportunities.   Nor does Ohio House dispute that these opportunities are "better" than those provided to boardinghouses.   In the end, the Court finds that asserting that the undisputed facts as merely the lesser of  "worse treatment of others" reduces to a semantic ploy advanced to obscure the facts.   Ohio House has rights which other did not enjoy: That is a benefit.

### b.    Benefits Based on Text of the Regulations

Next, Ohio House argues that "even if the City could demonstrate benefit by showing worse treatment of boardinghouses," the City was required to show that "the *text* of the ordinances provided the purported benefit."  (Mot. 3 (emphasis in original)).   It also argues that the Court erred in treating the City's Zoning Code as a question of fact in dispute.  (Id. at 4).   At summary judgment, the Court found that the parties had conflicting evidence whether 650-foot separation requirement and other unique requirements imposed on group homes were actually "benefits" or "burdens," and thus, reserved this "fact-intensive inquiry" for trial.  (Order on MSJ 23, Dkt. No. 245).   Contrary to Ohio House's contention, the Court did not ask the jury to "decide the terms" of the City's code.

There was substantial evidence at trial that the City's regulations offered group homes a greater opportunity to operate, despite the additional restrictions imposed in obtaining the operator's permit, the benefits clearly outweighed the burdens, and that this regulation was the "least restrictive" means of achieving the City's interests.

Despite the parties' dispute over whether Ohio House would have been considered a "boardinghouse," the City presented evidence at trial that demonstrated that Ohio

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:19-cv-01710-JVS-GJS                                     Date   November 16, 2022

Title   The Ohio House, LLC v. City of Costa Mesa

House could have been classified as a "boardinghouse"[3] since its inception in 2012. (Apr. 13, 2022 Trial Tr.  140:23–141:17; 142:5–14; 156:10–20; 156:22–157:3).  Having established that Ohio House would have not been able to operate in a single-family residential zone as a "boardinghouse," the City then established that Ohio House had the ability to apply for an exception in to the boardinghouse regulations.  (See id.).  Under this exception, boardinghouses that qualify as "group homes" receive *better* housing opportunities (operating within a residential district without occupancy or room limit and being subject to a smaller separation requirement).  However, to receive such opportunities, applicants were required to follow certain steps that no other entity was required to follow, such as obtaining an operator's permit, which imposed stricter operating requirements, such as having a 24-hour onsite manager requirement, eviction rules, "good neighbor" policies, and parking compliance rules.

The City's regulations provided group homes like Ohio House with a choice: it could seek an opportunity to operate within a single-family residential district, which came with strings attached, or forgo that opportunity and comply with the boardinghouse regulations.  Based on both the text of the regulation and the evidence provided at trial demonstrating that Ohio House had such a choice, the jury could have reasonably concluded that seeking a boardinghouse conditional use permit was more burdensome than seeking the requirements to operate as a group home.  In other words, it could have found that these regulations advanced housing opportunities of disabled persons by providing the greater opportunity to operate within a single-family residential zone without any limits to occupancy or rooms rented.

Based on this substantial evidence, the jury could have reasonably concluded that the City's regulations were legally justified despite the regulation's differential treatment.

### c.      Legally Cognizable Justifications

Next, Ohio House contends that "[b]esides failing to establish 'benefit' based on the terms of the codes, the justifications for facial discrimination fail as a matter of law."

---

[3] Between 2000 and 2014, the City defined a "large boardinghouse" as a dwelling to accommodate four or more guests.  Ordinance No. 00-5 § 1(a)(1) (amending CMMC § 13-6), Dkt. No. 443-2, at 42.  It also defined "residential service facility" as a facility "other than a . . . boardinghouse" that provides personal services like supervision, guidance, therapy, and other nonmedical care.  (Id.).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
|---|---|---|---|

| Title | The Ohio House, LLC v. City of Costa Mesa |
|---|---|

(Mot. 8). It then goes on to attack the City's various justifications for enacting the ordinance. (See id.). This argument is confusing. It appears that Ohio House is conflating the facial discrimination claim and the disparate treatment claim. To be sure, the City did offer proof of various government interests in reducing the secondary effects of concentration on the community and on disabled persons themselves, such as reducing foot traffic, parking, smoking, "institutionalization" of group homes, and degradation of residential character of neighborhoods, to justify the enactment of the ordinance and the separation requirement. But this evidence was offered with respect to Ohio House's disparate treatment claim, not its facially discriminatory claim. Furthermore, it does not appear that the City ever offered "legitimate safety concerns," (see Jury Instruction No. 24), to justify its regulations, so it is unclear what relevance these articulated interests have with respect to the facial discrimination claims. In any case, whether or not the City's interests could have fallen into these "safety" concern justifications—which they do not—this is not dispositive because the jury could have found that the City's regulations were legally justified on the basis of "benefits" afforded to Ohio House.

In conclusion, Ohio House has failed its burden in demonstrating that the only conclusion that could be reached was that the City could not justify its facially discriminatory regulation.

2.      Discriminatory Statement Claim

The jury found that the City did not make a discriminatory statement in violation of either the FHA or the FEHA. (Special Verdict Question No. 2). Ohio House argues that because the Court should find that the zoning regulation is facially discriminatory as a matter of law, it should also find that it violates § 3604(c) and § 12955. (See Mot. 11).

Because the Court has rejected Ohio House's facial discrimination claim, the Court similarly rejects its discriminatory statement claim.

3.      Pattern or Practice Claim

A plaintiff may bring a civil action under the FHA against a city for engaging in a discriminatory housing practice. 42 U.S.C. § 3613(a)(1)(A). The Court previously held

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:19-cv-01710-JVS-GJS                Date   November 16, 2022

Title   The Ohio House, LLC v. City of Costa Mesa

that a private litigant may bring a pattern-or-practice claim, so the Court again rejects the City's theory that only the Attorney General can bring this claim. (Order on MSJ 30, Dkt. No. 245).

The Court instructed the jury that "Ohio House may prove its claim of disparate treatment . . . by proof of pattern or practice of discrimination." (Jury Instruction No. 31). To do so, Ohio House had to prove that "disability was a motivating factor in the City's enactment or implementation of those land-use rules, ordinances, policies or procedures." (Id.) The Court provided different metrics by which the jury could assess improper motive. (Jury Instruction No. 28). Ultimately, the jury found that Ohio House had not met this burden. (Special Verdict No. 1, Dkt. 427).

The Court disagrees with Ohio House that the only conclusion that could have been reached was that disability was a motivating factor in the City's enactment and enforcement of the regulations. A jury could have concluded based on substantial evidence that the City's actions were based on legitimate, nondiscriminatory reasons and that "would not be served by another practice that had a less discriminatory effect." Yellowstone Womens First Step House, Inc. v. City of Costa Mesa, No. 19-56410, 2021 U.S. App. LEXIS 26996, at *4 (9th Cir. Sep. 8, 2021) (denying a similar claim brought under a similar ordinance by the City).

The City's admission that the regulation's "intention was to adopt an ordinance that would allow the City to spread [group homes and sober-living homes] out a little bit so that [the City] would not be seeing the complaints and impacts" (Apr. 12, 2022 Tr. 146:8–14, Dkt. No. 442, at 902) could have been reasonably interpreted as a legitimate governmental purpose. This is so given that the City also provided testimony of balancing the interest of providing the "beneficial service" of the group homes against the negative secondary effects on the community and the disabled persons resulting from the clustering and overconcentration of group homes, such as increased traffic, parking, noise, cigarette smoke, preventing the "institutionalization" of residential neighborhoods, and preventing the degradation of their residential character. (see id. 146:10; [Apr. 13, 2022 Tr. 150:23–151:15; 177:4–21). The Court disagrees that the only inference that could be drawn from Ms. Le's statement was that disability or stereotypes about such disabilities was a "motivating factor" behind the enactment of the ordinance.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
|---|---|---|---|

| Title | The Ohio House, LLC v. City of Costa Mesa |
|---|---|

Next, Ohio House points to the City's pattern of denying accommodations as proof of discriminatory motive. (Mot. 13). The City does not respond to this argument in opposition. (See Opp'n 27).

There was never an instance in which the City made an exception to the 650-foot requirement. (Apr. 6, 2022 Tr., Dkt. No. 442, at 369–70) The City received 26 applications from sober living homes with six or more occupants for conditional use permits pursuant to the multi-family ordinance. (Apr. 6, 2022 Tr., Dkt. No. 442, at 366). Only two were granted by the City, and they did not seek an accomodation request. (Apr. 6, 2022 Tr., Dkt. No. 442, at 368; Apr. 13, 2022 Tr. 53:12–54:9). The other facilities were either denied because they could not meet the 650-foot requirement or because they relocated, withdrew their applications, or closed (Apr. 13, 2022 Tr., Dkt. No. 442, at 1013). For the facilities that were not approved, the City denied some of the applications because they could not meet the 650-foot requirement. (Apr. 6, 2022 Tr., Dkt. No. 442, at 368) After the Planning Commission stated that it did not want exceptions to the 650-foot because this would have been a "fundamental alteration of the zoning program," none of the requests seeking an exception to the 650-foot requirement was granted. (Apr. 6, 2022 Tr., Dkt. No. 442, at 369–70). Other than the two facilities that receive permits to operate, no additional permits were granted to group homes or sober-living homes that were subject to the same regulations as Ohio House. (Apr. 13, 2022 Tr., Dkt. No. 442, at 1014).

Based on this evidence, there was no doubt that the jury *could* have concluded that the denial of conditional use permits and the reasonable accommodation requests was sufficient proof of discriminatory motive. But this was not the only conclusion that could have been reached. On balance, given that the City provided legitimate nondiscriminatory justifications for its 650-foot requirement and the testimony provided that this was a fundamental aspect of the regulatory scheme, the jury could have concluded that the denial of accommodation requests were reasonable and not motivated at all by discriminatory intent. The burden that Ohio House carried in proving its disparate treatment claim by way of patterns or practices was a heavy one. The jury was not unreasonable in concluding that Ohio House failed to meet this burden.

4.      Interference Claims

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
|---|---|---|---|

| Title | The Ohio House, LLC v. City of Costa Mesa |
|---|---|

The Court instructed the jury that to prevail on its interference claim under 42 U.S.C. § 3617, Ohio House had the burden of proving: (1) it was engaged in a protected activity; (2) it suffered an adverse action by the City; and (3) "the City took that adverse action against Ohio House because it was engaged in an activity protected under the [FHA]." (Jury Instruction No. 33). The Court instructed the jury to accept as true that providing housing to persons with disabilities is a protected activity and that Ohio House provides housing for persons with disabilities. (Id.).

The jury found that Ohio House failed to prove that the City unlawfully interfered with the rights of disabled persons to obtain a housing opportunity of their choice. (Special Verdict Question No. 4). To reach this conclusion, it must have concluded that there was no causal link between the protected activity and the adverse action.

A reasonable jury could have reached this conclusion. After the City denied Ohio House's conditional use permit application and its respective repeals, the City ordered Ohio House to cease operations as a group home because it was operating without a permit. The burden was on Ohio House to prove the City denied its applications because Ohio House provided housing to disabled persons. Ohio House points to the City's *lack* of action taken against Ohio House before 2019 as proof that the City was motivated to drive out disabled persons in residential areas. Ohio House's owner Brandon Stump testified that before Ohio House started receiving civil citations for operating without a permit, "the City had never cited Ohio House's property for violating any City rule or regulation." (Mot. 15). It never received a civil citation for overcrowding, noise, parking, smoke, or disruption. (Dkt. No. 477, at 530).

However, like Ohio House's other arguments regarding discrimination, this too fails. This evidence does not compel only one conclusion, i.e., that the City denied Ohio House's applications because it was a sober living home servicing disabled persons. The jury could have inferred that from the denial of the permits were based simply on the fact that Ohio House did not meet the 650-foot separation requirement to operate within the residential zone of its choosing. The jury had sufficient evidence to conclude that City took adverse action against Ohio House because it had not met the requirements under the City's regulation, not because it was a sober living home or because its residents were disabled. Nor did Ohio House produce any other evidence that the City's denial was pretext for its "real" discriminatory intent.

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:19-cv-01710-JVS-GJS                    Date    November 16, 2022

Title    The Ohio House, LLC v. City of Costa Mesa

        5.    Reasonable Accommodation Claim

        The FEHA and the FHA make it unlawful to refuse reasonable accommodations to persons with disabilities where the accommodation was both reasonable and necessary. Giebeler v. M & B Assocs., 343 F.3d 1143, 1156–57 (9th Cir. 2003). At trial, the Court instructed the jury to consider whether Ohio House proved that its request was reasonable and necessary to afford its residents an equal opportunity to use and enjoy the housing "of their choice in the community." (Jury Instruction No. 34). The Court defined an accommodation as "necessary" if it (1) "enables disabled persons to use and enjoy housing to the same extent as a nondisabled person"; (2) "enhance the disabled person's quality of life by ameliorating the effect of their disability"; or (3) without the accommodation, would interfere with a disabled persons right to "use and enjoy their dwelling." (Jury Instruction No. 35). "Reasonable" accommodations were those that were "reasonable on [their] face or reasonable given the specific circumstances related to the plaintiff's request." (Jury Instruction No. 36).

        The jury found that Ohio House failed to prove that the City unlawfully refused to make a reasonable accommodation for disabled persons. (Special Verdict Question No. 3). To reach this conclusion, the jury must have concluded that either (a) Ohio house failed to prove that the accommodation was "necessary" or (b) that the City met its burden in showing that departure from its rule would have resulted in a fundamental change.

                a.    **Necessary Accommodation**

        Ohio House was required to show that but for the accommodation, it would likely be denied an equal opportunity to enjoy housing of its choice. Giebeler, 343 F.d at 1155. This is a "causal" inquiry that examines whether the requested accommodation, which in this case would be relief from the 650-foot requirement, would have allowed the disabled residents living at Ohio House to receive the same enjoyment from the property as nondisabled persons would receive. Howard v. HMK Holdings, LLC, 988 F.3d 1185, 1190 (9th Cir. 2021) (citing Anderson v. City of Blue Ash, 798 F.3d 338, 361 (6th Cir. 2015)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:19-cv-01710-JVS-GJS                    Date   November 16, 2022

Title      The Ohio House, LLC v. City of Costa Mesa

The City argues that Ohio House failed to demonstrate that its request was "necessary" to afford an equal opportunity because "it could apply under the equal Boardinghouse Regulations like everyone else." (Opp'n 30). In other words, the request for relief from the 650-foot separation requirement was not "necessary" because a disabled person can simply go live somewhere else. But the availability of another dwelling in another residential neighborhood does not satisfy disabled persons' right under the FHA to a residence of *their* choice. Giebeler v. M & B Assocs., 343 F.3d 1143, 1149 (9th Cir. 2003) (noting that the goal of the accommodation provisions was to "protect the right of handicapped persons to live in the residence of *their choice*" and "to end the unnecessary exclusion of persons with handicaps from the American mainstream" (emphasis added)); see Schwarz v. City of Treasure Island, 544 F.3d 1201, 1225–26 (11th Cir. 2008) ("[A]vailability of another dwelling somewhere within the City's boundaries is irrelevant" to the reasonable accommodation analysis"). Indeed, the jury was instructed that the "existing supply of facilities of a similar nature and operation in the community that could provide individuals with a disability an opportunity to live in a residential setting *does not satisfy* a disabled person's right to a dwelling opportunity *of his or her choice*." (Jury Instruction No. 38 (emphasis added)).

At trial, the City focused Ohio House's ability to relocate to other areas of the City where it could comply with the 650-foot requirement and whether there was "some compelling reason" that the requirement would not apply (Apr. 8, 2022 Tr., Dkt. No. 442, at 585, 1194). Barry Curtis testified that the focus of the request was whether Ohio House could point to a dwelling somewhere else in the city to determine whether it was "necessary." (Apr. 8, 2022, Dkt. No. 442, at 587; 588). The City reiterated that Ohio House could choose to relocate as a "boardinghouse," which would require relocation outside of a single-family residential zone, or relocate in a residential zone in another part of the City where it could be further than 650 feet from another sober living home.

The evidence shows that but for the accommodation, disabled persons residing at Ohio House would have been able to reside in an dwelling of their choosing. Therefore, no reasonable jury could conclude that based on the evidence provided that Ohio House's request was unnecessary.

b.    **Fundamental Change**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:19-cv-01710-JVS-GJS                    Date    November 16, 2022

Title    The Ohio House, LLC v. City of Costa Mesa

Nonetheless, the jury could have concluded that granting the request could have constituted a fundamental change in the City's zoning scheme and thus the accommodation was unreasonable.  Giebeler, 343 F.3d at 1158 ("[A]n accommodation is reasonable under the FHAA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens").  The City denied Ohio House's request for reasonable accommodations seeking a reduction in the 650-foot separation requirement on the basis that doing so would have required a fundamental alteration in the City's zoning scheme.  The jury was required to consider that "[e]ven if Ohio House proved initially that its requested accommodation was reasonable, if the City could prove that the reasonable accommodation would have required a fundamental alteration in the nature of the City's zoning scheme, including its land use regulation, then Ohio House's claim fails."  (Jury Instruction No. 37).

Substantial evidence was presented to allow the jury to conclude that deviating from the 650-foot limitation would have constituted a fundamental change in the character of the community.  Ms. Le testified having a cluster of group homes increases the number of adults living in an area, which increased parking and traffic, leads to increased related complaints.  (Apr. 12, 2022 Tr., Dkt. 442, at 889–91).  While Ohio House did not receive any specific noise, parking, or smoking complaints in the past, (see id. at 530), the City offered evidence that having a higher number of persons per households like Ohio House strained the City's infrastructure (id. at 906), which raised the precise concerns that the regulations were aimed at preventing.   The City wanted to reduce these effects to prevent the "institutionalization" of residential neighborhoods and the degradation of the residential nature to benefit all residents—including the residents at sober living homes.   (Id. at 933).  The separation requirement "was fundamental" to alleviate these secondary effects which were the underlying purpose of the regulations.  (Id. at 907–08).

The jury could have concluded that the 650-feet requirement was fundamental to the character of the community and that 650 feet was the least restrictive means of accomplishing such goals.  Thus, Ohio House's request for judgment as a matter of law on this claim fails.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:19-cv-01710-JVS-GJS                     Date   November 16, 2022

Title   The Ohio House, LLC v. City of Costa Mesa

In conclusion, the Court **DENIES** the motion for judgment as a matter of law as to all Ohio House's claims.

### C.   Alternative Motion for New Trial

Ohio House moves for a new trial because (1) the court's instructions were erroneous; (2) the court erred in admitting Brian Stump's testimony; (3) the court erred in excluding statements made by California and the United States regarding the application of the FEHA and FHA and city staff reports; and (4) the evidence was so one-sided that the weight of evidence was contrary to the verdict.

### 1.   Errors in Jury Instructions and Verdict Form

### a.   **Facial Discrimination Instructions and Verdict Form**

Ohio House makes several challenges to the jury instructions regarding the facial discrimination claim.  It first challenges the "watered-down" instruction that the jury must "accept as true" that Ohio House "offered sufficient evidence" that to prove that the regulations were facially discrimination.  Specifically, Ohio House objects to Jury Instruction No. 19: "[Y]ou must accept as true that Ohio House has offered sufficient evidence to prove that each of the following provisions fo the City's group home regulations are facially discriminatory." (Jury Instruction No. 19).  In essence it argues that instead, the instruction should have read something to the effect of "you must accept as true that the City's group home regulations are facially discriminatory."  (See Mot. 18 (criticizing the lack of definitive instruction that the regulations were in fact facially discriminatory)).

The Court rejects this argument.  The jury was instructed to distinguish between whether a regulation differentiated between disabled persons and nondisabled persons by its terms and whether this was justified.  The Court instructed the jury that the term "facial discrimination" refers to a "zoning or land use regulation which, by its terms, applies different requirements, standards, or procedures to housing" to disabled persons versus nondisabled persons.  (Jury Instruction No. 18).  And a "facially discriminatory regulation violates the [FHA] and [FEHA] unless it is legally justified." (Id.).  Then the Court instructed the jury that it must accept as true that Ohio House offered "sufficient

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
|---|---|---|---|

| Title | The Ohio House, LLC v. City of Costa Mesa |
|---|---|

evidence" to prove that each of the regulations are "facially discrimination." (Jury Instruction No. 19). In other words, it did not need to prove that the regulations treated disabled persons differently. In the same instruction, the jury was asked whether "the City has proven by a preponderance of the evidence that these provision are justified." (Id.). Based on the foregoing, the Court does not believe that the jury concluded that the regulations did not differentiate between disabled persons and nondisabled persons by its terms.

Next, Ohio House objects to the location of instruction that the City could not "use proof of legitimate, nondiscriminatory government interest to justify facial discrimination," which it contends was "buried at the end of the instructions" after the Court's instruction that the jury could consider whether the City used its zoning powers. The order of the instructions, it argues, allowed the jury to "conflate" the rational basis justifications relevant to the disparate treatment claim with the more stringent justifications required to defend a facially discriminatory claim. However, there is no reason to believe that the way in which the instructions were ordered confused the jury in this regard. The instructions were clear that with respect to the facial discrimination claim, the City could not use proof of "legitimate, nondiscriminatory government interest[s]."

Next, Ohio House argues that the Court erred in denying Ohio House's request that the special verdict form separately ask whether the City "had proven its affirmative defense to facial discrimination" because this allowed the City to "conflate and lump together the justifications for facial discrimination with those unable to support its justification defense." (Mot. 21). The Court finds this argument unpersuasive for similar reasons that it believes that its facial discrimination instructions were sufficient and nonprejudicial.

b.   **Interference Instructions and Verdict Form**

Ohio House objects to the Court's instruction that one of Ohio House's theories asserted was that "the City adopted certain housing regulations with an intent to interfere with disabled persons housing opportunities." (Jury Instruction No. 13). It argues that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
|---|---|---|---|

| Title | The Ohio House, LLC v. City of Costa Mesa |
|---|---|

this instruction required the jury to consider whether Ohio House offered proof of an underlying discriminatory housing practice. (Mot. 22). This is a leap in logic. Nowhere in the jury instruction regarding the interference claim did the Court instruct the jury to consider whether there was any proof of underlying discriminatory housing practice. (See Jury Instruction No. 33). In essence, Ohio House's objection to the court's instructions is that the jury did not follow the court's clear instructions.

Next, Ohio House also objects to the final Special Verdict Form Question No. 4, which states, "Do you find by a preponderance of the evidence that [Ohio House] proved that [the City] interfered with the rights of disabled to a housing opportunity of their choice in violation of the [FHA] and [FEHA]." (Special Verdict Form No. 4). It argues that the question should have revised to ask whether the City interfered with *Ohio House's* rights, not "rights of disabled," because the interference claim was "personal" to Ohio House. The Court also rejects this argument. The Court believes that Jury Instruction No. 33 was sufficient in instructing the jury to consider whether there was a causal connection between the Ohio House's engagement in an activity protected under the FHA (providing housing to disabled persons) with the City's adverse actions (See Jury Instruction No. 33).

### c.      **Refusal to Instruct on Ohio House's Theories**

Next, Ohio House makes various arguments that the Court erred in refusing to add instructions regarding the reasonable accommodation claims and facial discrimination claims. (See Mot. 22–23). However, for similar reasons discussed supra, the Court concludes that the denial of these additional instructions did not prejudice Ohio House. The Court believes that the existing instructions were clear and allowed the jury to properly evaluate Ohio House's claims.

Ohio House also argues that the Court erred in refusing to instruct the jury that the City's group home regulations may not conflict with federal or state law because the jury "needed to be made aware that other authorities besides the City governed the legality of its zoning regulations." (Mot. 23). It is not clear what relevance these instructions would have had on Ohio House's claims. The Court already instructed the jury that the relevant statutes were the FEHA and FHA. Thus, the jury was aware of the specific federal statutes applicable to this case.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
|---|---|---|---|

| Title | The Ohio House, LLC v. City of Costa Mesa |
|---|---|

    2.    <u>Inflammatory Statement by Brandon Stump</u>

At trial, the City played a video deposition clip of Brandon Stump because he was unavailable.   The portion that was played contained racial and ethnic slurs, including the n-word.   Ohio House objected to the use of the deposition on relevance grounds, arguing that it did not add any probative value.  The Court denied the objection on the basis that it added probative value despite the strong language.   The Court reasoned that the jury could consider the passage in context of the discussion of what he, as Ohio House's owner, believed that statements about "degrading the character of the neighborhood" was discriminatory.   In his response, Mr. Stump stated that he interpreted that statement to refer to the racial composition of the neighborhood.   (<u>See</u> Stump Depo. 138:13–139:3, Dkt. No. 390).  This statement contained the racial slurs.  The City also displayed the a slide containing the excerpt at closing arguments.  (Mot. Ex. 2, Dkt. 467-3).

Shortly after the jury retired, the jury passed a note to the Court asking the Court to clarify Mr. Stump's statement, stating that Mr. Stump's statement, which the jury characterized as a "threat," "changed the grounds" for the lawsuit because the statement implied that the City's denial was pretextual for racial discrimination rather than discrimination on the basis of disability.  (<u>See</u> Jury Note, Dkt. No. 429).  Ohio House argues that the jury was obviously disturbed by the use of his words.

There is no dispute that Mr. Stump's use of racial and ethnic epithets was highly offensive.  However, the Court finds that any confusion the jury might have had about the basis for Ohio House's claims were sufficiently addressed in the Court's response to the jury's note.  Therein, the Court instructed the jury that there was no legal claim based on racial motivations or any claim based on Mr. Stump's personal opinions.  (Response to Jury Note, Dkt. No. 430).  Therefore the Court declines to grant a new trial based on the admission of this statement.

    3.    <u>Exclusion of Evidence</u>

Ohio House argues that the Court's exclusion of statements made by California and the Unites States government opining as to the legality of the City's regulations. Specifically, it contends that the jury should have had the benefit of knowing that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
|---|---|---|---|

| Title | The Ohio House, LLC v. City of Costa Mesa |
|---|---|

California Department of Housing and Community Development (HUD) advised the City of Encinitas that its group home regulations—which were modeled on the City's regulations—violated the FEHA. Ohio House argues that the exclusion of evidence prejudiced Ohio House because the "only government agency" opinion to the legality of the City's regulation was the "City itself." (Mot. 27).

The Court disagrees with Ohio House's characterization of the testimony provided. The City offered testimony by City staff about the City's rationales and justifications for its regulations and conduct. Ms. Le did not opine the legality of the regulation. Additionally, the Court renews its finding that such evidence was not relevant and would constitute an undue consumption of time, (see Order on MIL, Dkt. No. 347), because evidence that a government entity expressing an opinion with regard to another city's ordinance is not evidence the City's ordinances are unlawful and because admission of such evidence would have caused a "trial within a trial."

Ohio House also argues that the Court erred in refusing to admit (1) a set of staff reports, which it contends was relevant to counter the City's claims that the group homes could have been considered boardinghouses; (2) Nancy Clark's 1995 letter that was needed for impeachment; and (3) various evidence demonstrating the need for sober living services, which Ohio House claims that it needed to refute the City's claims that Ohio House was "greedy."

The Court finds that the absence of the foregoing evidence does not warrant a new trial under Fed. R. Civ. P. 59(a). The refusal of such evidence did not prejudice Ohio House such the trial was unfair or created a miscarriage of justice.

4. <u>Verdict Against Weight of Evidence</u>

Ohio House argues that the verdict was against the weight of the evidence, which could not support the conclusion that the group homes "were boardinghouses." It repeats the same argument that a group home was not considered a boardinghouse and therefore, there is no possible way for the jury to conclude that group homes received the "benefit" of better housing opportunities. However, for the reasons already discussed, the group homes were not considered a boardinghouse because it cannot be considered both simultaneously—not that it never could have been considered a boardinghouse. The City

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:19-cv-01710-JVS-GJS | Date | November 16, 2022 |
|---|---|---|---|

| Title | The Ohio House, LLC v. City of Costa Mesa |
|---|---|

presented testimony that facilities like Ohio House, which serviced disabled persons, could have been classified as a boardinghouse if it applied for a conditional use permit, which it was free to do.  (Apr. 12, 2022 Tr.140:23–141:17; 142:5–14; 156:10–20; 156:22–157:3, Dkt. No. 442).

## IV.  CONCLUSION

For the foregoing reasons, the Court **DENIES** the motion and finds that the verdict stands.

**IT IS SO ORDERED.**